IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-03986-KAS

RED BIRD FARMS DISTRIBUTION COMPANY, a Colorado corporation doing business as Red Bird Farms,

      Plaintiff,

v.

WEST COAST CRYOGENIC SOLUTIONS, INC., a Texas corporation, and
AIRGAS USA, LLC, a Pennsylvania Limited Liability Company,

      Defendants.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendant West Coast Cryogenic Solutions Inc. ("WCC")'s Motion to Dismiss [#20] ("WCC's Motion") and on Defendant Airgas USA LLC ("Airgas")'s Motion to Dismiss [#21] ("Airgas's Motion"). Plaintiff filed a Response [#23] in opposition to WCC's Motion [#20], to which WCC filed a Reply [#28]; Plaintiff also filed a Response [#22] in opposition to Airgas's Motion [#21], to which Airgas filed a Reply [#29]. The Court has reviewed the briefing, the entire case file, and the applicable law. For the following reasons, WCC's Motion [#20] and Airgas's Motion [#21] are each **GRANTED IN PART**.

## I.    Background

Plaintiff is a Colorado company that processes and distributes poultry; its principal office is in Englewood, Colorado. *Compl.* [#1] ¶¶ 1, 10. WCC is a Texas corporation that designs, manufactures, and installs commercial freezer equipment; its principal office is

in California. *Id*. ¶¶ 2, 3. Airgas is a Pennsylvania corporation that markets, distributes, and sells commercial freezer equipment (WCC and Airgas together, "Defendants"); its principal office is also located in Pennsylvania. *Id*. ¶¶ 4, 5.

Plaintiff alleges that on August 8, 2023, Airgas submitted a proposal (the "Proposal") to sell a commercial freezer (the "Freezer") to Plaintiff. *Id*. ¶¶ 11-12. The Proposal stated that the Freezer was designed to meet United States Department of Agriculture ("USDA") standards and requirements and referenced a warranty of "[three] months for parts, under proper and normal use and service." *Id*. ¶¶ 13-14.

On January 18, 2024, Plaintiff and Airgas entered into an Equipment Sales Agreement (the "Agreement") for purchase of the Freezer for $380,435, as well as "engineering project management/startup support" for an additional $5,000. *Id*. ¶ 15. The Agreement further provided that "[Airgas] will, to the fullest extent possible, assign, transfer, or otherwise extend to [Plaintiff] all guarantees and warranties received from the manufacturer of [e]quipment furnished hereunder." *Id*. ¶ 16. By May 2, 2024, Plaintiff had paid Airgas all but approximately $26,433 of the amount due to Airgas under the Agreement. *Id*. ¶¶ 17-18. Plaintiff further alleges that when the Agreement was made, Airgas knew that the Freezer's use was subject to USDA or similar regulations and that hygienic, rust-free conditions would be essential to the Freezer's use. *Id*. ¶¶ 21-22. WCC manufactured the Freezer. *Id*. ¶ 24.

Airgas subsequently shipped the Freezer to Plaintiff in pieces requiring assembly, including panels that needed to be welded together. *Id*. ¶ 26. At Airgas's suggestion, on May 6, 2024, Plaintiff retained WCC for $112,516 to assemble and install the Freezer pursuant to an assembly contract (the "Assembly Contract") and purchase order. *Id*. ¶¶

27, 30.  Plaintiff states that it viewed WCC's website prior to contracting with WCC and that WCC claimed nearly three decades of experience, access to certified stainless-steel welders, and the ability to provide "the highest quality services . . . to support all freezing and chilling operations." *Id*. ¶¶ 28-29. Plaintiff further alleges that when the parties entered the Assembly Contract, WCC, like Airgas, knew that the Freezer's use was subject to USDA or similar regulations and that hygienic, rust-free conditions would be essential to the Freezer's use. *Id*. ¶¶ 33-34.

From June 20, 2024, through January 16, 2025, Plaintiff alleges that it paid WCC a total of $158,118.48 for the Freezer's installation, materials, and related expenses. *Id*. ¶ 36. WCC performed installation of the freezer over the course of several weeks, including welding numerous stainless-steel sections together. *Id*. ¶ 38. However, soon after installation was complete, rust began to appear both in and around areas of WCC's welds, as well as "on areas that had not been welded at all." *Id*. ¶ 39. The rust rendered the Freezer noncompliant with USDA standards. *Id*. ¶ 45.

Plaintiff states that it "promptly" notified Airgas and WCC of the defects and that WCC attempted repairs; however, these initial attempts were unsuccessful, and rust either remained or quickly reappeared on the Freezer. *Id*. ¶¶ 40-41. On February 6, 2025, a representative for Plaintiff met with a WCC representative to discuss this issue; during this meeting, the representative allegedly stated that WCC had used improper wire brushes while installing the Freezer that contaminated or compromised the welds, causing rust around the welded areas. *Id*. ¶¶ 42-43.

On February 24, 2025, Plaintiff sent both WCC and Airgas demand letters requiring removal of the Freezer, reimbursement of installation costs, and compensation for related

3

damages; however, WCC and Airgas refused to remove the Freezer. *Id*. ¶¶ 46-47. Following the demand letters, WCC contacted representatives for Plaintiff and insisted that it could fix the rust problem; accordingly, Plaintiff permitted WCC to conduct a second repair attempt in late July 2025, but this attempt was also unsuccessful, and the rust either remained or quickly reappeared on the Freezer. *Id*. ¶¶ 48-49.

On August 14, 2025, a USDA inspector allegedly rejected the Freezer due to rust, rendering it unusable for Plaintiff's purposes; Plaintiff further alleges that the damage caused by the rust is "irreparable." *Id*. ¶¶ 50-51.

In the Complaint [#1], Plaintiff alleges significant damages in the form of the purchase cost of the Freezer, the installation costs, operational disruptions, and loss of facility space occupied by the nonfunctional Freezer. *Id*. ¶ 51. As a result of these allegations, Plaintiff brings claims for breach of contract against WCC (Claim 1), *id*. ¶¶ 52-57; negligence in the alternative to Claim 1 against WCC (Claim 2), *id*. ¶¶ 58-63; breach of contract against Airgas (Claim 3), *id*. ¶¶ 64-68; unjust enrichment in the alternative to Claims 1 and 3 against both Defendants (Claim 4), *id*. ¶¶ 69-72; negligent misrepresentation against Airgas (Claim 5), *id*. ¶¶ 73-80; breach of express warranties against both Defendants (Claim 6), *id*. ¶¶ 81-88; and "revocation of acceptance" against Airgas (Claim 7). *Id*. ¶¶ 89-96.

WCC and Airgas now each separately move via the Motions to dismiss the Complaint [#1]. In WCC's Motion [#20], WCC argues that (1) Plaintiff fails to state a claim against WCC for breach of contract because the Assembly Contract does not contain any warranty to install the Freezer in a good, reasonable, or workmanlike manner; (2) Plaintiff fails to state a claim against WCC for negligence because of the economic loss rule; (3)

Plaintiff fails to state a claim against WCC for unjust enrichment because a valid and enforceable contract, the Assembly Contract, covers the subject matter at issue; and (4) Plaintiff fails to state an express warranty claim against WCC because the Assembly Contract does not contain an express warranty and WCC never provided any warranty to Plaintiff. *See generally WCC's Motion* [#20]. In Airgas's Motion [#21], Airgas argues that (1) Plaintiff's allegations do not reflect that Airgas breached either the Agreement or any express warranty provided to Plaintiff by Airgas; (2) Plaintiff's unjust enrichment claim fails as a matter of law because a valid and enforceable contract, the Agreement, covers the subject matter at issue; (3) Plaintiff's claim for negligent misrepresentation is insufficiently pled and fails to establish justifiable reliance on the part of Plaintiff; and (4) Plaintiff's "revocation of acceptance" allegations do not satisfy the statutory requirements under Colo. Rev. Stat. § 4-2-608 for Plaintiff to maintain such a claim. *See generally Airgas's Motion* [#21].

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." In other words, dismissal is appropriate where the allegations in the complaint, even if true, do not warrant relief under the laws that the plaintiff invokes. Thus, a Rule 12(b)(6) motion "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that offers "labels and

5

conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation marks and citation omitted).

### III.    Analysis

### A.    Breach of Contract – WCC (Claim 1)

The elements of a breach of contract claim are: "(1) the existence of a contract; (2) the plaintiff's performance of the contract . . . ; (3) the defendant's failure to perform the contract; and (4) the plaintiff's damages as a result of the defendant's failure to perform the contract." *Univ. of Denver v. Doe*, 547 P.3d 1129, 1139 (Colo. 2024).

Here, there is no dispute that a contract between WCC and Plaintiff exists in the form of the Assembly Contract and that Plaintiff performed its duties under the Assembly Contract. However, although Plaintiff alleges that WCC failed to perform its duties under the Assembly Contract, in both the Complaint [#1] and in Plaintiff's response to WCC's Motion [#20], Plaintiff fails to cite or reference any provision of the contract that might require WCC to install the Freezer in a "good, reasonable, and workmanlike manner, free from defects" despite the Complaint [#1] suggesting that such an obligation is WCC's sole source of liability under Claim 1. Instead, in responding to WCC, Plaintiff merely states without explanation or elaboration that WCC breached the contract because "it used improper wire brushes" and because Plaintiff ultimately did not receive "the benefit of the contract, a usable freezer that meets USDA regulations." *Response* [#23] at 4. Moreover, in a separate section within Plaintiff's Response [#23], Plaintiff acknowledges that the Assembly Contract "does not expli[ci]tly require WCC to install the Freezer in a good,

6

reasonable, and wo[r]kmanlike manner, free from defects." *Id*.

The Court finds that Plaintiff has not sufficiently alleged that WCC failed to perform in accordance with any express provision of the Assembly Contract. Accordingly, the Court considers whether WCC breached an implied contractual warranty instead.

Under Colorado law, there is an implied warranty to complete any *construction* contract in a "good and workmanlike" manner; "however, th[is] doctrine of implied warranties is inapplicable to *service* contracts." *Liberty Mut. Fire Ins. Co. v. Ferrellgas, Inc.*, No. 11-cv-03257-REB-BNB, 2013 WL 212638, *2 (D. Colo. Jan. 18, 2013) (emphasis added); *see also W.R. Hansen v. LKA Gold Inc.*, 816 F. App'x 259, 264 (10th Cir. 2020) (noting that the Colorado Supreme Court has "explicitly rejected the notion that implied warranties apply to service contracts") (citing *Samuelson v. Chutich*, 529 P.2d 631, 633-34 (Colo. 1974) (other citations omitted)). "Service contracts" include contracts primarily for assembly or installation, like the Assembly Contract. *Liberty Mut. Fire Ins.*, 2013 WL 212638, at *2 (finding that a contract for installation of a propane tank's primary purpose was for provision of services rather than construction). Here, the Complaint alleges that WCC "fail[ed] to properly assemble and install the [F]reezer." *Compl.* [#1] ¶ 56. Thus, the Complaint demonstrates that the contract's purpose concerned WCC's assembly and installation services. *See Liberty Mut. Fire Ins.*, 2013 WL 212638 at *2 (noting that the plaintiff's complaint concerned the defendant's alleged breach of a service contract through its selection of a defective component for "installation" and failure to "properly install" the propane tank). Indeed, Plaintiff entirely fails to argue that the contract between Plaintiff and WCC is not a service contract. Accordingly, the Court finds that Plaintiff has not sufficiently alleged that WCC breached any implied warranty under the Assembly

7

Contract.

For these reasons, the Court **grants** WCC's Motion [#20] as to Claim 1 and **dismisses without prejudice** Plaintiff's breach of contract claim (Claim 1) against WCC.

## B.    Negligence – WCC (Claim 2)

Plaintiff brings Claim 2 for negligence against WCC in the alternative to Claim 1. "In Colorado, to establish a claim of negligence, a plaintiff must demonstrate the following elements: '(1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach of duty caused the injury.'" *Roland v. Letgo, Inc.*, 644 F. Supp. 3d 907, 917 (D. Colo. 2022) (quoting *Dolin v. Contemp. Fin. Sols., Inc.*, 622 F. Supp. 2d 1077, 1082 (D. Colo. 2009)).

WCC argues that the economic loss rule bars Plaintiff's negligence claim. *WCC's Motion* [#20] at 4; *WCC's Reply* [#28] at 2-4. "Under the economic loss rule, a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *City of Fort Collins v. Open Int'l, LLC*, 146 F.4th 929, 937-38 (10th Cir. 2025) (quoting *Mid-Century Ins. Co. v. HIVE Constr., Inc.*, 567 P.3d 153, 158 (Colo. 2025)). WCC argues that the economic loss rule applies here because Plaintiff alleges only economic loss and the Assembly Contract governs the relationship between the parties and Plaintiff's negligence claim relies on the same allegations as its breach of contract claim.

"To determine whether a tort duty arises independent of a contract, Colorado courts ask: '(1) whether the relief sought in [tort] is the same as the contractual relief; (2) whether there is a recognized common law duty of care in [tort]; and (3) whether the [tort]

8

duty differs in any way from the contractual duty.'" *Open Int'l*, 146 F.4th at 938 (quoting *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004)). Moreover, a party providing its services pursuant to a service contract can still be found liable under Colorado law for violating a duty to exercise reasonable care. *See Lembke Plumbing & Heating v. Hayutin*, 366 P.2d 673, 675 (Colo. 1961) (reasoning that "the law allows no vacuum and imposes the duty [to exercise due care, caution and skill], even if "this duty may not be contractual"); *Johnson-Voiland-Archuleta, Inc. v. Roark Assocs.*, 572 P.2d 1220, 1221 (Colo. App. 1977) (affirming judgment for provider of engineering services, because implied warranties do not exist in service contracts; rather, liability may arise from acts of negligence); *cf. W.R. Hansen*, 816 F. App'x at 264 (finding no error in trial court's refusal to instruct the jury on an implied duty to perform drilling services in a workmanlike manner and declining appellant's invitation "to import negligence concepts into a breach of contract action in which it did not assert a negligence claim").

As discussed in connection with Claim 1 above, WCC provided its services to Plaintiff pursuant to a service contract, the Assembly Contract, and Plaintiff now alleges that WCC owed Plaintiff an "independent duty" in accordance with "industry standards" to perform the installation with "reasonable knowledge, skill, and care[,]" but that WCC failed to do so. *Compl.* [#4] ¶ 60; *see also Response* [#23] at 4 (acknowledging that the Assembly Contract does *not* require WCC to install the Freezer in a good, reasonable, and workmanlike manner or free from defects). The Court finds that Plaintiff has plausibly alleged that WCC owes Plaintiff a duty of care independent of the service contract and that that WCC failed to act in accordance with this duty. *See W.R. Hansen*, 816 F. App'x at 264 (finding no error in district court's refusal to instruct the jury to apply a negligence

standard to a breach of service contract claim); *Liberty Mut. Fire Ins.*, 2013 WL 212638 at *2 (dismissing breach of contract claim, but not the negligence claim, in suit arising from the improper installation of a propane tank pursuant to a service contract).

In its quest to defeat this claim, WCC argues that *Lembke* is distinguishable because that case concerned a plumbing contractor's duties to a homeowner, while "[t]his case involves sophisticated business entities[.]" *Reply* [#28] at 3 & n.7 (citing *Nw. Territory Ltd. P'ship v. Omni Props., Inc.*, No. 05-cv-02407-MJW-PAC, 2007 WL 521178, at *6 (D. Colo. Feb. 15, 2007)). The Court is unpersuaded. While the court in *Northwest Territory* commented that "sophisticated entities" negotiated the at-issue contracts, 2007 WL 521178, at *6, the court's decision does not appear to hinge on that fact. Rather, the court focused on the fact that the plaintiff's negligence claim covered the identical conduct— and contractual duties—covered by the breach of contract claim; namely, "failure to maintain the properties properly, misusing assets, and failing to keep suitable business records or provide an accurate accounting[.]" *Id*.

For these reasons, the Court **denies** WCC's Motion [#20] as to Claim 2.

## C.    Breach of Contract – Airgas (Claim 3)

As stated above, in order to survive a motion to dismiss a breach of contract claim, the plaintiff must allege: "(1) the existence of a contract; (2) the plaintiff's performance of the contract . . . ; (3) the defendant's failure to perform the contract; and (4) the plaintiff's damages as a result of the defendant's failure to perform the contract." *Univ. of Denver*, 547 P.3d at 1139.

Airgas argues that Plaintiff fails to plausibly allege that it breached the Agreement because Plaintiff's allegations reflect that rust only appeared on the Freezer *after* WCC

installed it and that the rust only appeared because *WCC* used unsuitable welding techniques. *Airgas's Motion* [#21] at 7. The Court disagrees. As Airgas acknowledges, Plaintiff also alleges that rust appeared on the Freezer "on areas that *had not been welded at all*" and that "[t]he equipment provided by Airgas contained rust in areas that were *not* welded by WCC[.]" *Compl*. ¶¶ 39, 67 (emphasis added); *see also Airgas's Motion* [#21] at 7. This fact, accepted as true at this stage of the proceedings, allows the Court to "draw the reasonable inference" that WCC's actions were not the only factor that led to rust appearing on the Freezer, but that the Freezer was faulty even before it was installed. *See Iqbal*, 556 U.S. at 678 ("[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Accordingly, the Court finds that Plaintiff has alleged just enough for this claim to survive the motion to dismiss stage.

Relatedly, the Court disagrees with Airgas's argument that it can escape liability because of a warranty which disclaims liability for accident, mishandling, improper installation, or the like. *See Airgas's Motion* [#21] at 7. Because Plaintiff alleges that rust appeared on the Freezer for reasons unrelated to the freezer's allegedly improper installation, the Court is, at this stage, unpersuaded that the warranty allows Airgas to escape liability.

For these reasons, the Court **denies** Airgas's Motion [#21] as to Claim 3.

## D.    Unjust Enrichment – Both Defendants (Claim 4)

Plaintiff brings Claim 4 for unjust enrichment against WCC and Airgas in the alternative to Claims 1 and 3 for breach of contract. To recover for unjust enrichment, a plaintiff must show that "(1) a benefit was conferred on the defendant by the plaintiff; (2)

the benefit was appreciated by the defendant; and (3) the benefit was accepted by the defendant under such circumstances that it would be inequitable for it to be retained without payment of its value." *Does v. Rodriguez*, No. 06-cv-00805-LTB, 2007 WL 684117, at *5 (D. Colo. Mar. 2, 2007) (quoting *Humphrey v. O'Connor*, 940 P.2d 1015, 1021 (Colo. App. 1996) (internal quotation marks omitted)).

While a plaintiff "may plead breach of contract and unjust enrichment claims in the alternative," a plaintiff "cannot recover for unjust enrichment where an express contract covering the same subject matter exists." *United Water & Sanitation Dist. v. Geo-Con, Inc.*, 488 F. Supp. 3d 1052, 1058 (D. Colo. 2020) (citations omitted). However, a plaintiff may be able to recover on an unjust enrichment claim when a right to recovery does not exist under an enforceable contract, such as "when an express contract failed or was rescinded." *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003).

A question exists as to whether Plaintiff can maintain an unjust enrichment claim even where, as here, the parties do not dispute that there are valid and enforceable contracts between Plaintiff and each of the parties that cover the subject matter of this claim. *See, e.g.*, *Future Legends, LLC v. Qualite Sports Lighting, LLC*, No. 22-cv-02672-CNS-MEH, 2024 WL 3900214, at *5 (D. Colo. Aug. 21, 2024) (noting that the court would dismiss an unjust enrichment claim asserted against a defendant if the defendant admitted that the at-issue contract was valid and enforceable).

Here, in contrast with Plaintiff's negligence claim, the Complaint [#1] does not sufficiently allege or clarify that there is any distinction between the relief sought or duties owed under Plaintiff's breach of contract claims and the relief sought or duties owed under

12

Plaintiff's unjust enrichment claim. Moreover, Plaintiff has not alleged, even in the alternative, that the contracts between the parties are not valid or that the subject matter of Plaintiff's Claim 4 is not covered by the contracts. Instead, Plaintiff and Defendants agree that the Agreement and the Assembly Contract are valid. *See WCC's Reply* [#28] at 4 ¶ 7 ("Plaintiff's unjust enrichment claims must be dismissed because a valid contract covers the same subject matter."); *Airgas's Motion* [#21] at 8 ("Therefore, Red Bird may not assert a claim for unjust enrichment because the [Agreement] is a valid contract that covers the purchase and sale of the freezer"); *Response* [#22] at 4 ("Red Bird's Complaint alleges . . . the existence of an enforceable Agreement pursuant to which, Red Bird paid [specific sums] to Airgas for the purchase of the Freezer"); *Compl.* [#4] ¶ 53 ("Red Bird Farms and WCC entered into a valid and enforceable Contract").

Therefore, dismissal of Plaintiff's unjust enrichment claim is appropriate. *See, e.g.*, *McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1153 (10th Cir. 2023) (affirming dismissal of alternatively pled unjust enrichment claim where the plaintiffs "did not plead *any* facts, whether in the alternative or not, that would plausibly state a claim for unjust enrichment[,]" such as the absence of a contract, the contract failed or was rescinded, or the plaintiff's claim falls outside the contract's scope). Accordingly, the Court **grants** WCC's Motion [#20] and Airgas's Motion [#21] as to Claim 4 and **dismisses without prejudice** Plaintiff's unjust enrichment claim.

### E.    Negligent Misrepresentation – Airgas (Claim 5)

To state an actionable an actionable claim for negligent misrepresentation, a plaintiff must present plausible allegations that: "(1) one in the course of his or her business, profession or employment; (2) makes a misrepresentation of a material fact,

13

without reasonable care; (3) for the guidance of others in their business transactions; (4) with knowledge that his or her representations will be relied upon by the injured party; and (5) the injured party justifiably relied on the misrepresentation to his or her detriment." *U.S. Welding, Inc. v. Tecsys, Inc.*, No. 14-cv-00778-REB-MEH, 2016 WL 9735718, at *2 (D. Colo. Sept. 6, 2016) (citing *Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011)).

Plaintiff alleges that Airgas falsely or negligently misrepresented to Plaintiff that the Freezer was designed to meet USDA standards and requirements before the parties entered the contract, even though in fact, the Freezer did not meet these requirements. *Compl.* [#4] ¶¶ 75-76. In seeking dismissal, Airgas presents two arguments, both unavailing. First, it argues that "the Complaint does not contain a single allegation that suggests the [F]reezer was not designed to meet USDA standards and requirements." *Airgas's Motion* [#21] at 8. However, as discussed in section III(C) above, Plaintiff's allegations allow the Court to draw a reasonable inference that the Freezer was faulty— and not designed to meet USDA standards and requirements—even before it was installed. *See Compl.* [#4] ¶ 39 ("Shortly after installation, rust began to appear, both in and around areas of WCC's welds, and on areas that had not been welded at all."). Further, Plaintiff expressly alleges that "[t]he equipment provided by Airgas contained rust in areas that were not welded by WCC and, therefore, did not meet USDA standards as represented by Airgas." *Id*. ¶ 67; *see also id*. ¶ 75.

Second, Airgas argues that because the Agreement "supersedes and terminates all prior negotiations between the parties," Plaintiff cannot now claim that it justifiably relied on an alleged extra-contractual representation by Airgas. *Airgas's Motion* [#21] at 8-9; *Airgas's Reply* [#29] at 5-6. In response, Plaintiff argues that it stated an actionable

14

negligent misrepresentation claim because it alleged that "(1) Airgas represented that the Freezer was designed to meet USDA standards and requirements"; "(2) Airgas supplied the information to guide [Plaintiff] in their business and knew that the information was false"; "(3) [Plaintiff] reasonably relied on this information"; and "(4) [Plaintiff] has been damaged as a proximate and direct result of the misrepresentation." *Response* [#22] at 6 (citing allegations in Complaint [#4]). Plaintiff has the better argument.

The Colorado Supreme Court squarely addressed this issue in *Keller v. A.O. Smith Harvestor Products, Inc.*, 819 P.2d 69 (Colo. 1991). The *Keller* court considered two questions certified to it by the Tenth Circuit, including:

> Whether a cause of action for negligent misrepresentation lies against the manufacturer of a product for representations made during the course of the sale of that product despite the execution of a fully integrated sales agreement.

819 P.2d at 70. The court answered that question in the affirmative. *Id*. at 73. To reach that conclusion, the court noted that "claims of negligent misrepresentation are based not on principles of contractual obligation but on principles of duty and reasonable conduct." *Id*. The court further noted,

> The policy of encouraging honesty and candor in contract negotiations, which policy is reflected in the recognition of an implied covenant of good faith and fair dealing, supports this result. The implied covenant of good faith and fair dealing would virtually be eliminated if a contracting party could escape liability for negligent conduct simply by inserting a general integration clause into the agreement.

*Id*. Finally, the court rejected the product manufacturer's argument that "negligent misrepresentation should not be available in suits against manufacturers[.]" because "no basis in principle [exists] to create a special shield encouraging manufacturers to make negligent misrepresentations of material fact in promoting purchases of their products." *Id*. Nevertheless, the court left open the possibility that a negligent misrepresentation

claim would be prohibited by a fully integrated agreement that "clearly and specifically" disclaims the buyer's reliance on pre-contract representations made by the manufacturer. *Id*. at 74; *see also LBI Group, LLC v. Scanlan*, No. 23CA1265, 2024 WL 3947026, at *5 (Colo. App. July 11, 2024).

In *Student Marketing Group, Inc. v. College Partnership, Inc.*, 247 F. App'x 90, 98-99 (10th Cir. 2007), the court determined that the contract language clearly and specifically preempted a negligent misrepresentation claim arising from inaccurate information the plaintiff received. The warranty clause expressly stated that "neither the accuracy nor the completeness of the information provided to lessee under this Agreement is guaranteed." 247 F. App'x at 99. The agreement also contained an integration clause that declared the agreements and all attachments thereto as the "entire agreement between the parties . . . and supersedes all previous agreements and understandings, whether oral or written, express or implied[.]"" *Id*.

Here, the Agreement does not appear to contain any clear and specific language that disclaims Plaintiff's reliance on pre-contract representations by Airgas. True, the Agreement states that it "constitutes the entire agreement between the parties and supersedes and terminates all prior negotiations." *Agreement* [#21-1] at 4-5. However, at this stage of the case, dismissal of the negligent misrepresentation claim based on that general integration clause would virtually eliminate the implied covenant of good faith and fair dealing. *See Keller*, 819 P.2d at 73. Accordingly, the Court **denies** Airgas's Motion [#21] as to Claim 5.

**F.    Breach of Express Warranty – Both Defendants (Claim 6)**

To state a claim for breach of an express warranty, a plaintiff must allege sufficient

16

facts to plausibly show that (1) a warranty existed; (2) the defendant breached the warranty; (3) the breach proximately caused the losses claimed as damages; and (4) timely notice of the breach was given to defendant. *McAuliffe*, 69 F.4th at 1151 (citing *Fiberglass Component Prod., Inc. v. Reichhold Chems., Inc.*, 983 F. Supp. 948, 953 (D. Colo. 1997)). Under Colorado law, a defendant creates an express warranty if it makes "an affirmation of fact or promise" to a plaintiff which becomes part of the basis for the underlying bargain. *Id.* (quoting Colo. Rev. Stat. § 4-2-313(1)(a)). A breach results if the product of the underlying bargain does not conform to the affirmation or promise. *Id.* (citing Colo. Rev. Stat. § 4-2-313(1)(a)).

In moving to dismiss Plaintiff's Claim 6, Airgas argues only that Plaintiff does not allege facts suggesting that Airgas breached the warranty under the Agreement because the warranty disclaims liability for reasons related to the Freezer's improper installation. *See Airgas's Motion* [#21] at 7; *Airgas's Reply* [#29] at 3-4. WCC, on the other hand, argues that WCC never provided Plaintiff with any warranty. *See WCC's Motion* [#20] at 1, 5-6.

Turning first to Airgas's Motion [#21], as already discussed, although the Complaint [#1] contains only sparse allegations regarding any inadequacy of the Freezer unrelated to its installation, Plaintiff nevertheless sufficiently alleges that the Freezer developed rust for reasons independent from its installation. Airgas does not acknowledge or address this point in arguing that Claim 6 should be dismissed.

WCC's Motion [#20] presents substantively different circumstances, as the Complaint [#1] does not reflect that WCC directly provided Plaintiff with any warranty. In the Response [#23] to WCC's Motion, Plaintiff argues that WCC is liable for breach of an

express warranty because of the warranty *Airgas* provided to Plaintiff in the Agreement and *Airgas's* alleged representations that the Freezer was USDA-compliant. *See Response* [#23] at 9-10. Plaintiff does not argue that the Assembly Contract contained a warranty. To the extent that Plaintiff points to a supposed "guarantee" on WCC's website, *see Response* [#23] at 10, Plaintiff admits that it failed to include any allegations regarding that guarantee in the Complaint [#1]. *See Response* [#23] at 10. Accordingly, based on the present allegations, that guarantee cannot serve as the basis for a breach of warranty claim.

For these reasons, the Court **denies** Airgas's Motion [#21] and **grants** WCC's Motion [#20] as to Claim 6. Claim 6 against WCC is **dismissed without prejudice**.

## G.     Revocation of Acceptance – Airgas (Claim 7)

Pursuant to the Colorado Uniform Commercial Code, a buyer of a "commercial unit," such as a machine, *see* Colo. Rev. Stat. § 4-2-105(6), "may revoke his acceptance of a . . . commercial unit whose nonconformity substantially impairs its value to him . . . if his acceptance was reasonably induced either by the difficulty of discovery [of the nonconformity] before acceptance or by the seller's assurances." COLO. REV. STAT. § 4-2-608(1)(b). Revocation "must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects." COLO. REV. STAT. § 4-2-608(2).

The parties agree that this provision of the Code applies to the Freezer. Nevertheless, Airgas argues that Plaintiff cannot revoke its acceptance because the Freezer underwent a "substantial change in condition" when WCC installed it, and Plaintiff's allegations reflect that the installation caused the subsequent nonconformity.

18

*Airgas's Motion* [#21] at 9; *Airgas's Reply* [#29] at 6. However, the Court again points to Plaintiff's allegation that rust appeared on the Freezer for reasons not caused by its installation. Therefore, the Court draws the reasonable inference that the Freezer was defective and nonconforming for reasons not due to a substantial change in its condition. Plaintiff allegations render plausible that Plaintiff would not have had the opportunity to discover this issue before the Freezer was installed.

For these reasons, the Court **denies** Airgas's Motion [#21] as to Claim 7.

### IV.    Conclusion

For the reasons set forth above,

IT IS HEREBY ORDERED that WCC's Motion to Dismiss [#20] and Airgas's Motion to Dismiss [#21] are each **GRANTED in part**.

IT IS FURTHER ORDERED that WCC's Motion to Dismiss [#20] is **GRANTED** as to Claims 1, 4, and 6, but **DENIED** as to Claim 2. Claims 1 and 4 are dismissed without prejudice in their entirety. Claim 6 is dismissed without prejudice insofar as Claim 6 implicates WCC.

IT IS FURTHER ORDERED that Airgas's Motion to Dismiss [#21] is **GRANTED** as to Claim 4, but **DENIED** as to Claims 3, 5, 6, and 7. Claim 4 is dismissed without prejudice. Although Claim 6 is dismissed insofar as it implicates WCC, Claim 6 proceeds against Airgas.

Dated: June 10, 2026                                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge

19